May it please the Court. Good morning, Your Honor. My name is William Keller, and I represent Plaintiff Appellant Russell Johnson in this appeal. This appeal presents that somewhat rare but happy conjunction of the law, the opportunity to right individual wrongs while at the same time provide clarifying guidance to the lower courts on a matter of legal import. This appeal comes to the Court from a dismissal at the pleading stage of claims made by Mr. Johnson, an African American, against his former employer and the employer's insurer, alleging illegal, retaliatory, and racially motivated termination of Mr. Johnson's disability benefits. The district court below committed reversible error in two main ways. First, it dismissed solely on statute of limitations grounds Mr. Johnson's Section 1981 and Title VII retaliation claims and his claim for intentional infliction of emotional distress. In reaching this decision, the district court ruled against Mr. Johnson at every term. It applied the wrong statute of limitations, it got the wrong approval date, and it wrongly construed equitable estoppel and equitable tolling. Correcting any one of these errors would result in allowing one or all of these claims to go forward. Here, let me note that it was the 1981 retaliation claim to which the district court applied the wrong statute of limitations. It ruled that the analogous two-year state statute should apply and not the four-year federal catch-all statute that is found in 28 U.S.C. Section 1658. The Ninth Circuit does not appear to have addressed this specific issue before, but in the most analogous case involving wrongful discharge, this court applied the four-year statute. And the district court's ruling is also contrary to the overwhelming weight of decisions on this very issue in other circuits and in almost all the district courts in this circuit. The second main way that the district court erred was in dismissing all of Mr. Johnson's other claims, which include common law claims such as abusive process and fraudulent concealment. The court wrongly concluded that none of these claims were properly pled, and moreover, to the extent that any of them were insufficiently pled, the district court failed to give Mr. Johnson the opportunity to replead his claims. Sotomayor, go ahead. Ginsburg, as to the claim of infliction of emotional distress, that, I think, would be a State claim. That's correct. And so then how do I know whether we apply Pennsylvania or California law? Well, that is, at this point, it has not been an issue in the case. I think one can argue that California law should apply. Mr. Johnson's a resident of California. Do we even know if there's a conflict between Pennsylvania law and California law? No, we don't. No, at this point. That's right. Remember, this was dismissed at the pleading stage, so we haven't gotten into any kind of case. Well, at the pleading stage, it might depend on which law it was. Yeah. The problem with that issue, I think, is that nobody seems to have considered which law applies or what the difference may be in the law. I suppose if the issue is not raised, you apply the law of the forum. I believe that's correct, Your Honor. And in this case, it would make sense, given that, as I mentioned, Mr. Johnson's a resident of this State. His disability benefits were being provided in this State. The act of retaliation that is claimed of took place in this State, in other words, the stopping of those benefits. So if that's correct, what's the California statute? I think the statute of limitations would be the two-year statute. Well, the question really is where does it ñ when does it accrue in California? Well, that's a good question, Your Honor. Oh, good. I'm glad my ñ When does it accrue? I would argue that the ñ and this has not been an issue that's been raised in the case at this point either. But I would argue that it would accrue at the same time. Well, that's a problem. You know, the issues that decide that particular claim haven't been raised, haven't been argued, haven't been briefed. You know, the question is whether that should ñ we should now start from scratch an oral argument and substitute that procedure for all the things that should have occurred previously. Well, the predominant claims in this matter are Federal claims, Section 1981 and Title VII. But we can't shift back and forth. We're now talking about intentional infliction of emotional distress. The argument about the 1981 claim is an entirely separate argument. It's not, Your Honor, to the extent that it involves accrual or could be governed by an accrual issue. And I would argue that all the ñ The Federal ñ the 1981 claim is a very simple dispute, whether it's a two-year statute or a four-year statute. It has nothing to do with accrual. And your argument, which you have not yet made, is that it's a four-year statute because of the Act of Congress adopted in 1990, which restored retaliation as a claim, and it hadn't been before that, and therefore it comes within the catch-all provision. Yes. Yes. That has nothing to do with accrual. That argument, Your Honor, has nothing to do with accrual. Okay. So let's separate the arguments. The 1981 claim I have just made for you, that argument. Okay. And that's the issue. Your opponent has a different view of it. But that has nothing to do with the State claim for intentional infliction of emotional distress, where the issue is the statute is unquestionably two years. And the question is, when did accrual occur? It may be different in Pennsylvania than it is in California. And I would submit, Your Honor, the California law would apply that the predominant issues here are, for all of the claims, are the Federal issues, and that accrual really should be analyzed similarly for all of these issues. The district court does not distinguish the accrual arguments. And I think what the district court claims that accrual took place when a petition was filed by the defendants to vacate the order that required the disability payments to be made. So it was the filing of that petition. And that may well be true in Pennsylvania, and it may not be true in California. And, in fact, it's more likely to be true under Federal law than under California law. But nobody has been briefing that question of whether you win on accrual in California and lose in Pennsylvania. It may make a difference. It may make a difference, if there is. But I would submit that the California law applies and that under California law, and in the Morales case that we cite, there were, I believe, some state law claims as well. And in that case, which is quite analogous to this, or at least instructional in this case, is that police officers were plaintiffs pursuing. You've only got two minutes, by the way. So you have to think about what you want to say if time for rebuttal. Well, okay. What I would like to say on the accrual is I believe the accrual really started at all the filing of the petition, all the erroneous and misleading letters that were sent to Mr. Johnson were all preliminary steps to the actual injury that took place, which was when his disability benefits were stopped. That was the actual injury. That is the standard under federal law of when the claims accrue. And if you would like, I'd be more than happy to brief that issue under California law. All right. Thank you, Counsel. You have a minute for rebuttal. Or I'll just keep going if that's... If you don't want to rebut what he says, no matter how wrong it is. I'll fire all my cannons at this first charge. All right. So the other thing is that for all of those claims, well, should I go through? I mean, you seem to understand the argument on whether, on what the statute should be for Section 1981. And I would also submit, though, that in any event, whenever the statute accrues, that it should be told based on fraudulent concealment and inducement by the defendants. The defendants in the action where they petitioned to vacate the court order requiring disability benefits stated one thing to Mr. Johnson, a very crucial point, and turned around at the last minute and told the court something totally different, which prevented Mr. Johnson from having any time to correct. In this case, in this particular instance, it was whether or not Mr. Johnson submitted a proper form by his psychiatrist. And at the time that the defendants turned around, told the court, no, it wasn't proper, even after they had told Mr. Johnson it was satisfactory, he had no further time to go to another psychiatrist, get another form submitted. And really for that reason, the district court in Pennsylvania ended up vacating the order. So I would submit that that constitutes inducement, fraudulent concealment that should not only toll the statute of limitations, but also constitutes a separate cause of action by Mr. Johnson. Thank you, counsel. I'm sorry we won't see you again in this case. May it please the Court. Good morning, Your Honors. I'm Russell Berner of Wilson, Elser, Moskowitz, Edelman & Dicker, on behalf of defendants and appellees. First, let me just address quickly the issue of the statute of limitations in Pennsylvania. The district court in this matter, in her first order of October of 2008, did find in the intentional infliction of emotional distress that the two-year statute of limitations was the same under both California and Pennsylvania statutes. That is at Appellant's Excerpts of Record on page 76. So the district court did address that under both ways and in both situations as a two-year statute. As to the two years and as to the accrual? She did not address the district court did not address the accrual issue. That seems to be maybe the critical issue. I think that even if we, in any circumstance under a two-year statute of limitations, accrual does not help the plaintiff appellant in either situation. Let me ask this. Wilson paid him disability benefits for a good number of years, and it doesn't seem from the record that he was any more mentally able  He was suing the police in Los Angeles. I mean, his conduct seemed to be worse rather than better. So what's the argument that he didn't continue to be eligible for benefits? I just kind of don't understand what the company was up to. Thank you, Your Honor. In the Excerpts of Records, the Pennsylvania decisions and the motions are contained. The situation was that at a point, plaintiff's appellant stopped providing any evidence of his disability. There was a 14-month period, approximately, where he was not submitting any opinions from psychiatrists or psychologists, and the disability carrier was trying to contact him. He had also moved and not provided him at some point with changes of address. So there was 14 months where there was no evidence of his disability, and that is, of course, required under the policy that there was a continued proof of disability. The situation then became when the petition to terminate benefits was filed and he was brought before the court. That brought in the fact that there had been no proof, and that is when the court in the Eastern District of Pennsylvania first gave him the opportunity to go out and get treatment and provide proof of disability. And the second time when it came around, the letter that he had submitted was within the court's record. There was no fraudulent concealment by lucent or by Cigna. That was before both the Eastern District of Pennsylvania and the Third Circuit. So it was a matter of proving his disability, which is a requirement under the policy. Wait, so he had put in a letter from his therapist that the insurance company did not think it was sufficient? The letter came in untimely initially and then was not sufficient. As to the intentional infliction of emotional distress, and I think we ought to leave a little time for the federal claim, you say it doesn't matter because it's two years. When did he stop paying benefits after the court ordered it? Your Honor, I would argue that it was not the end of the payment of benefits. I know you'd argue that, but what was the date? Was it less than two years before the filing of the suit? Yes, when the payment stopped after they received the decision from the Pennsylvania District Court, that would have brought it within two years. And the date of the court order was less than two years. That was what I was referring to, yes. The date of the court order was within two years. So that the date of accrual could matter if the law in Pennsylvania and California were different, for instance, as to when it accrues. Yes, I would agree with you, Your Honor. Okay. Do you know when it accrues in California? I don't. I didn't have that in front of me. I'm not sure whether the Third Circuit addressed that. I didn't check the record for that. Therefore, you're really not in a position to say that it didn't accrue within two years. Under Pennsylvania law, correct, since this was decided under California law. Under California law. Under California law, we know the accrual. We know that what the district court decided was that the accrual, that the event accrued when on Cigna's action, on Lucen's action, which was the petition to terminate. Well, that may be the district court's view, but that's why we're here. I understand. And that's under California law, we've got cases that we've sought. Actually, the U.S. Supreme Court case, the Delaware College v. Ricks. Is that on California law? That was the United States Supreme Court. I know. It was on federal law, under federal accrual. Now we're talking about California law. And then I've got federal court cases. Okay. So we don't know whether it's accrued. Under California state law, no, Your Honor. Okay. Now, do you want to go to the federal issue? Yes, please. And why isn't it a four-year statute? The facts of this case don't bring it under the same rubric as the other 1981 cases. The Section 1981 and the 1658 change to a four-year statute of limitations all involve true employment-related workplace retaliation-type claims. All involve wrongful discharge, change of scheduling, events that occur, or failure to hire, all which involve the true employment relationship.  I believe that it is possible that a true employment retaliation, as some of the district courts and some of the other circuit courts have determined, would fall under Section 1981 and 1658. But in this situation, what we have is a disability contract. It was a different contract. And the benefits that are being disputed here and the claim that is being made here is based on the making and enforcing of the disability contract. That claim would have existed before the 1991 amendment. His employment relationship with Lucent had terminated 20 years earlier. There was a settlement agreement in place where he released his employment claims from the time of his actual employment up until 1989. So none of the employment relationship was still in existence at this time. It was the disability claim, which I submit is a different contract, and as I said, involves the making and enforcing, the enforcement of that contract. Under that basis, I would argue that Section 1658 does not apply, and that under Humphreys it was a claim that would have existed prior to 1991 and therefore would still be the two-year statute of limitations. So you are saying it is a 1981 claim? Well, part of it. I would dispute that the claim against Signa is a 1981 claim because it's not an employment action, but as to Lucent, I would admit that it at least was alleged properly as a 1981 claim. And he would have been able to recover that after Patterson and before the congressional amendment? I think that because it's a contract that involved the insurance contract and not other employment issues that he would have been able to. I think that Humphreys and the suggestions in Humphreys, that it was a claim that existed prior to Donnelly. Donnelly may have abrogated it for a year, a year and a half until 1658 came into being and then the claim was available again afterwards. But I do believe that prior to Donnelly and prior to 1990, that the claim would have been available to him to make. All of the different cases that Plaintiff Appellant has cited involved more typical employment discrimination, actual workplace retaliation, or were vague or otherwise in their, excuse me, and also Elmwood Bali out of Ninth Circuit, which the plaintiff suggests, was also a, involved knowledge of wrongful discharge. So it was a discharge case all involving the typical employment relationship. I do want to point out that in none of the plaintiff's filings has he argued about the Title VII cause of action or it being the accrual of the statute of limitations involving the EEOC claim. So we would assert that he has waived that. And with regard to all of the other state law causes of action, including fraudulent concealment, the district court in this matter clearly went through and gave this pro se plaintiff all the benefit of the doubt. He had an extensive first complaint and then she gave him an opportunity on specific issues only to add and amend the complaint. In that first amended complaint he added another party, which of course was dismissed, and a slew of state law claims. District court said that they weren't proper, but as there were similar circumstances and facts, that she addressed them in dismissing the first amended complaint and threw them all and dismissed them all with prejudice. So she had given him an opportunity only as a limited basis to amend the first amended complaint, but he went beyond that and she gave him the opportunity anyway. It was a long and lengthy complaint. It was certainly the opportunity to address anything he needed to. Thank you. Thank you, Your Honor. The case disargued will be submitted.
judges: Fletcher B. , Reinhardt, Wardlaw